UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD MILLS and DAVID P. HASKINS,

                    Plaintiffs,

v.

SENIOR CHIEF OFFICER LUPLOW, et al.,

                    Defendants.

**REPORT AND
RECOMMENDATION**

04-CV-00005(A)(M)

This case was referred to me by Hon. Richard J. Arcara in accordance with 28

U.S.C. §636(b) for all pretrial matters (Dkt. #208). Before me is defendants' motion for

summary judgment dismissing the claims of plaintiff David Haskins ("Haskins") (Dkt. #389).

For the following reasons, I recommend that the motion be GRANTED.

## PROCEDURAL BACKGROUND

This 42 U.S.C. §1983 action was initially commenced by plaintiff Richard Mills

("Mills") *pro se* by complaint filed January 6, 2004 (Dkt. #1). In July 2004 the complaint was

amended to add Haskins as a plaintiff (Dkt. #11). Haskins' claims arise from his incarceration at

the Genesee County Jail from March 19, 2004 through March 21, 2005. Haskins'

Counterstatement of Material Facts (Dkt. #448), ¶1.

Plaintiffs were granted leave to file second and third amended complaints (Dkt.

##14, 18, 86), and a supplemental complaint (Dkt. ##31, 196). Thereafter, Haskins was granted

leave to file another supplemental complaint (Dkt. #222-1) alleging deliberate indifference

against defendants Gary Smith, M.D. and Greg Groth, P.A. (Dkt. #242). The supplemental

complaint and third amended complaint were deemed to be Haskins' fourth amended complaint. Id.

The relevant facts will be discussed in the remainder of this opinion.

## DISCUSSION AND ANALYSIS

**A.   Summary Judgment Standard**

"Summary judgment is a drastic procedural weapon." Garza v. Marine Transport Lines, Inc., 861 F. 2d 23, 26 (2d Cir. 1988).  It is warranted "only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.  Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party." Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003).

However, while the moving party must demonstrate the absence of any genuine factual dispute, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**B.    Haskins' Sixth, Seventeenth, Eighteenth, Nineteenth, Twenty-First and Twenty-Second Causes of Action**

Haskins does not oppose defendants' motion for summary judgment as to these causes of action. Haskins' Memorandum of Law (Dkt. #448), p. 2.  Therefore, I recommend that his sixth, seventeenth, eighteenth, nineteenth, twenty-first[1] and twenty-second causes of action be dismissed.[2]

**C.    Haskins' Claims Against the Genesee County Jail**

Defendants argue that Genesee County Jail is not a proper defendant and should be dismissed.  Declaration of Shawn Martin, Esq. (Dkt. #392), ¶83.  Haskins does not dispute this argument, nor can he..

"It is well settled that, under New York law, 'departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" Pierce v. Chautauqua County, 2007 WL 2902954, *3 (W.D.N.Y. 2007) (Curtin, J.);  Latona v. Chautauqua County Jail, 2004 WL 2457797, *3 (W.D.N.Y. 2004) (Scott, M.J.) ("In New York, departments like the [Chautauqua County Jail], which are merely administrative arms of a municipal corporation, do not have a legal identity

---

[1]    Although Haskins does not challenge defendants' motion to dismiss the twenty-first cause of action relating to the destruction of the medical log book, he does discuss the evidence relating to this claim.  *See* Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), ¶¶204-207.

[2]    The first, second, third, fourth, fifth, eleventh, sixteenth, and twentieth causes of action are alleged only by Mills, and the fourteenth and fifteenth causes of action are omitted from the Third Amended Complaint.

separate and apart from the municipality and cannot be sued"). Therefore, I recommend that defendant Genesee County Jail be dismissed from the case.

## D.    Haskins' Americans With Disability Act and Rehabilitation Act Claims

Haskins asserts a number of claims pursuant to the Americans with Disability Act ("ADA"), 42 U.S.C. §§12132 and 12203, and Rehabilitation Act, 28 U.S.C. §794. Defendants argue that these claims should be dismissed against the individual defendants since such claims are not authorized by the ADA or Rehabilitation Act. Defendants' Memorandum of Law (Dkt. #390), Point VII. Haskins does not dispute this argument, nor can he.

"Because the ADA and Rehabilitation Act do not provide for liability against individual defendants, plaintiff's claims under these statutes are dismissed against [the individual] defendants". Allah v. Goord, 405 F.Supp.2d 265, 279 (S.D.N.Y. 2005). See also Menes v. CUNY University of New York, 92 F. Supp. 2d 294, 306 (S.D.N.Y. 2000) ("Nor can individuals be named in their official or representative capacities as defendants in ADA or Rehabilitation Act suits.").

I also recommend that Haskins' remaining claims against Genesee County and Genesee County Mental Health Services for violations of the ADA and Rehabilitation Act be dismissed, as he has not alleged a proper basis for those claims. "The requirements for stating a claim under the ADA are virtually identical to those under §504 of the Rehabilitation Act. Stated in the ADA's terms, a plaintiff is expected to show that (1) he or she is a qualified individual with a disability; (2) he or she is being excluded from participation in, or being denied the benefits of some service program, or activity by reason of his or her disability; and (3) the entity

-4-

which provides the service, program or activity is a public entity." <u>Smith v. Masterson</u>, 538 F. Supp. 2d 653, 657 (S.D.N.Y. 2008). Haskins has not established that he suffers from a qualifying mental or physical impairment which substantially limits a major life activity, or that he was denied the benefits of a service, program or activity by reason of a disability.

**E.    Haskins' Claims Pursuant to 18 U.S.C. §§241, 242, 245, 1503 and 1505**

Haskins asserts a number of claims pursuant to 18 U.S.C. §§241, 242, 245, 1503 and 1505. Defendants argue that these are criminal statutes under which Haskins cannot assert a private right of action. Declaration of Shawn Martin, Esq. (Dkt. #392), ¶14. Haskins does not dispute this argument, nor can he. *See* <u>Bacon v. Suffolk Legislature</u>, 2007 WL 2288044, *1 n. 1 (E.D.N.Y. 2007) ("The Court notes that 18 U.S.C. §§241 and 242 are criminal statutes; thus, plaintiff has no private right of action under these laws."); <u>The United States of America ex rel. Farmer v. Kaufman</u>, 750 F. Supp. 106, 108 (S.D.N.Y. 1990) ("There is no explicit authority for private citizens to bring suit under [18 U.S.C. §1503], nor will the courts imply such authority."); <u>Dorman v. Zavatsky</u>, 1995 WL 451018, *3 (E.D.N.Y. 1995) (no private right of action under 18 U.S.C. §1505); <u>John's Insulation, Inc. v. Siska Construction Co.</u>, Inc., 774 F. Supp. 156, 163 (S.D.N.Y. 1991) ("This federal criminal statute, 18 U.S.C.A. §245, which permits federal prosecution for interference with a list of federally protected activities, confers neither substantive rights nor a private right of action for damages."). Therefore, I recommend that these claims be dismissed.

**F.  Haskins' Claims against Genesee County**

"A municipality is a 'person' to whom §1983 applies." <u>Rochez v. Mittleton</u>, 839 F. Supp. 1075, 1078 (S.D.N.Y. 1993).  To hold a municipality liable under §1983, a plaintiff must "plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right".  <u>Batista v. Rodriguez</u>, 702 F. 2d 393, 397 (2d Cir. 1983).  S<u>ee</u> <u>Vippolis v. Village of Haverstraw</u>, 768 F. 2d 40, 44 (2d Cir. 1985), *cert. denied*, 480 U.S. 916 (1987).

In order to prove the existence of a custom or policy, a plaintiff must present evidence of either a formal policy which is officially endorsed by the municipality, or a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials.  *See* <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 690-91 (1978).  A custom or policy may also be established if the challenged conduct was by government officials responsible for establishing municipal policies.  *See* <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483-84 (1986).  "The inference that a policy existed may . . . be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." <u>Ricciuti v. N.Y.C. Transit Authority</u>, 941 F. 2d 119, 123 (2d Cir. 1991).

Haskins' twenty-second cause of action alleges that the conduct alleged in the Third Amended Complaint was the result of a policy or custom of Genesee County.  However, Haskins has conceded that his twenty-second cause of action should be dismissed.  Therefore, all claims against Genesee County, as well as all claims against the individual defendants in their

-6-

official capacities should likewise be dismissed. *See* <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (a claim against a municipal official in his or her official capacity is treated as a claim against the entity itself).

### G.    Haskins' Damage Claims

Defendants argue that Haskins "has failed to identify any physical injury as outlined in 42 U.S.C. §1997e(e), and thus is not entitled to the relief that he requests. Having demonstrated that Haskins has not suffered an actual injury . . . the defendants are entitled to judgment as a matter of law." Defendants' Memorandum of Law (Dkt. #390), Point III. Haskins does not directly respond to this aspect of defendants' motion.

"Section 1997e(e) of Title 42 provides that '[n]o federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.' That provision bars recovery of compensatory damages for mental and emotional injuries, absent physical injury, in §1983 actions." <u>Nash v. McGinnis</u>, 2008 WL 4898999, *6 (W.D.N.Y. 2008) (Larimer, J.). " 'Courts have strictly construed this requirement, barring claims by prisoners who demonstrate solely emotional or mental injury and barring physical injury claims where the injury alleged is *de minimis*.' " <u>Abdur-Raqiyb v. Erie County Medical Center</u>, 536 F. Supp. 2d 299, 304 (W.D.N.Y. 2008) (Larimer, J.). "Section 1997e(e) applies to all federal civil actions including claims alleging constitutional violations. Because Section 1997e(e) is a limitation on recovery of damages for mental and emotional injury in the absence of or showing of physical injury, *it does not restrict a plaintiff's ability to recover compensatory damages for actual injury,*

-7-

*nominal or punitive damages, or injunctive and declaratory relief.*" Thompson v. Carter, 284 F.

3d 411, 416 (2d Cir. 2002) (emphasis added). "Section 1997e(e) purports only to limit recovery

for emotional and mental injury, not entire lawsuits." Id. at 418.

Thus, even if I were to conclude that Haskins had not sustained a physical injury,

it would not follow that his claims must be dismissed in their entirety.


## H.  Haskins' Seventh Cause of Action: Release of Confidential Medical Information

Haskins alleges that the Genesee County Jail lacks a written protocol for sick call

and mental health care visits, and that it was the official policy of Sheriff Maha and

Superintendent Greer that inmates disclose to their floor officers their confidential medical and

mental health issues in order to receive treatment. Third Amended Complaint (Dkt. #204),

¶¶199-201. He also alleges that there were an insufficient number of doctors available, which led

to him being denied medical attention for days. Id. at ¶203.

Haskins claims that as a result of this conduct, he is entitled to recover under the

Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§241 and 242,

42 U.S.C. §12132, and New York State law. Id. at ¶204. He seeks compensatory and punitive

damages, as well as injunctive relief. Id. at ¶205.

Defendants argue that Haskins failed to exhaust this claim. Defendants'

Memorandum of Law (Dkt. #390), p. 4; Declaration of Shawn Martin, Esq. (Dkt. #392), ¶¶10

and 20. This point is undisputed by Haskins. Haskins' Memorandum of Law (Dkt. #448, Point

III). There is also no complaint, grievance or other indication in the record showing that Haskins

complied or attempted to comply with the exhaustion requirements of the Genesee County Jail

for this claim. *See* 9 N.Y.C.R.R. §7032.4. Therefore, I recommend that Haskins' seventh cause of action be dismissed on this ground.

However, if Haskins *had* exhausted this claim, I would recommend that it not be dismissed, at least to the extent that is based on the Fourteenth Amendment.[3] Defendants argue that the right to privacy of medical records is neither fundamental nor absolute, and that Haskins waived his right to privacy by instituting this suit. Defendants' Memorandum of Law (Dkt. #390), p. 10. I disagree. Unlike the facts in <u>Crawford v. Manion</u>, 1997 WL 148066, *1 (S.D.N.Y. 1997), upon which defendants rely, the medical information at issue in Haskins' claim was not released in connection with a pending suit. Rather, he complains of the sick call procedures at the Genesee County Jail, which required inmates to disclose their confidential medical conditions. Third Amended Complaint (Dkt. #204), ¶¶199-202.

Defendants argue that "when an inmate requests to see the doctor or mental health he places his name on a list. Nothing more is required and no confidential information need be disclosed to the floor officers." Declaration of Shawn Martin, Esq. (Dkt. #392), ¶21. However, defendants' argument is belied by their own rules, which provide that "if you wish to see the Jail Medical Staff give your name to the duty officer, and explain to him the nature of your illness. He will place your name on the 'Sick Call' list." Mills' Declaration (Dkt. #423), ¶139; Appendix F, Volume 1 (Dkt. #117), Ex. 4.

Defendants also argue that prison officials may impinge on Haskins' rights of confidentiality, but only to the extent reasonably related to legitimate penological interests: "If

---

[3] To the extent that this cause of action alleges that Haskins was denied adequate medical treatment (Eighth Amendment claim), this claim is addressed *infra* (pp. 18-38).

an inmate did not request to see the jail medical there would be no indication that they would need to be brought to the medical unit. Simply requesting to see the doctor is not an infringement of any right of privacy. Having inmates submit a written request to see the jail medical unit is a legitimate penological interest. Officers are needed to bring inmates to the medical unit. If no one requests to see the doctor then no officers are needed to transport the inmates". Defendants' Memorandum of Law (Dkt. #390), p. 11.

While inmates have a constitutional right to privacy against disclosure of their medical records and condition, "prison officials can impinge on that right . . . to the extent that their actions are 'reasonably related to legitimate penological interests'". Powell v. Schriver, 175 F. 3d 107, 112 (2d Cir. 1999). See Nolley v. County of Erie, 776 F. Supp. 715, 729, 731 (W.D.N.Y. 1991) (Curtin, J.). "Courts must evaluate four factors in making the reasonableness determination: whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests." Salahuddin v. Goord, 467 F. 3d 263, 274 (2d Cir. 2006).

"Prison authorities cannot rely on general or conclusory assertions to support their policies. Rather, they must first identify the specific penological interests involved and then demonstrate both that those specific interests are the actual bases for their policies and that the policies are reasonably related to the furtherance of the identified interests. *An evidentiary showing is required as to each point*." Nolley, *supra*, 776 F. Supp. at 732 (emphasis added).

Because defendants have introduced nothing other than an attorney affidavit, they have not satisfied their burden of establishing the reasonableness of their sick call procedure.

Defendants further argue that "there is no allegation that either of the Defendants named in this cause of action, Ronald Greer or Gary Maha, released any information." Declaration of Shawn Martin, Esq., (Dkt. #392), ¶22). It is well settled that the "personal involvement of a supervisory defendant may be shown by evidence that the defendant . . . created a custom or policy fostering the violation". Thomas v. Ashcroft, 470 F. 3d 491, 496-97 (2d Cir. 2006). The allegations in the Third Amended Complaint establish the personal involvement of defendants Greer and Maha. Haskins alleges that it was "the official policy of Ronald Greer and Gary Maha that inmates tell the floor officer the medical problem". Third Amended Complaint (Dkt. #204), ¶200. While defendants could have submitted evidence of Greer's and Maha's lack of personal involvement in support of their motion for summary judgment, they failed to do so. See Orraca v. Pilatich, 2008 WL 4443274, *6 (N.D.N.Y.) (defendant bears a "modest burden" to establish lack of personal involvement); Kneitel v. Danchuk, 2007 WL 2020183, *11 (E.D.N.Y. 2007) ("Defendants have failed to meet their burden to show that Orrico and Lubrano have no personal involvement in the deprivation since they have not made a prima facie showing of what those two defendants' procedural responsibilities indeed were."). .

I.      Haskins' Eighth Cause of Action: Inadequate Mental Health Treatment

Haskins alleges that defendants Sheriff Maha, Superintendent Greer, Ted Miller, Augusta Welsh, Luplow, Correction Officer Zipfel and Genesee County did not "provide a mental health eval and medicine review from March 19, 2004 though August 31, 2004, never

-11-

seeing a psychiatrist or psychologist any any [*sic*] followup care at all during this time period."
Third Amended Complaint (Dkt. #204), ¶209. Haskins also alleges that defendants Welsh and
Miller denied him "mental health care and services before incarceration by the Genesee County
Mental Health . . . due to the denial of medicaid benefits . . ." Id. at ¶210.

Haskins alleges that as a result of this conduct, he is entitled to recover under the
Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§241 and 242,
42 U.S.C. §12132, Rehabilitation Act §504, and New York State law. Id. at ¶212. He seeks
compensatory and punitive damages, as well as injunctive relief. Id. at ¶213.

Defendants argue that Haskins was provided with adequate mental health care
while incarcerated, and that there is no evidence that they acted with deliberate indifference
towards Haskins' condition. Declaration of Shawn Martin, Esq. (Dkt. #392), ¶25. In order to
establish a violation of the Eighth Amendment arising out of inadequate medical treatment,
plaintiff must prove that defendants acted with "deliberate indifference to [his] serious medical
needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

The "deliberate indifference" standard consists of both objective and subjective
components. Hathaway v. Coughlin, 37 F. 3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154
(1995). Under the *objective* component, the alleged medical need must be "sufficiently serious."
Id. A "sufficiently serious" medical need is "a condition of urgency, one that may produce death,
degeneration, or extreme pain." Id. "Factors that have been considered include the existence of
an injury that a reasonable doctor or patient would find important and worthy of comment or
treatment; the presence of a medical condition that significantly affects an individual's daily
activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F. 3d 698,

702 (2d Cir. 1998). "The medical condition does not have to occur immediately; it suffices if the condition presents itself 'in the next week or month or year.'" Moore v. McGinnis, 2004 WL 2958471, *6 (W.D.N.Y. 2004) (Siragusa, J.).

To satisfy the *subjective* component, plaintiff must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. Hathaway v. Coughlin, 99 F. 3d 550, 553 (2d Cir. 1996). "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. See also Hernandez v. Keane, 341 F. 3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093 (2005) (likening the necessary state of mind to "the equivalent of criminal recklessness"). In order to be found "sufficiently culpable," the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837.

In addition to their memorandum of law and attorney declaration, defendants support  this aspect of  their motion with affidavits from defendants Augusta Welsh (Dkt. #396), Nicole Desmond (Dkt. #398), Corrections Officer William Zipfel (Dkt. #399) and Terese Bryan (Dkt. #394), which each attach Haskins' mental health records and attest that the records are kept in the ordinary course of business. Defendants also rely on the affidavit of Anthony Racaniello, M.D., which attaches a psychiatric evaluation he prepared for Haskins (Dkt. #393).

Haskins argues that "Shawn Martin's Affirmation attempts to attest to 'excellent medical care' but this kind of Affirmation is not sufficient for defendants to meet their burden on a summary judgment motion." Haskins' Memorandum of Law (Dkt. #448), p. 12. I disagree. Defendants can meet their burden of establishing their entitlement to motion for summary judgment by relying on Haskins' medical records to establish the absence of any evidence supporting deliberate indifference to his mental health needs. "'In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to the absence of evidence to support an essential element of the nonmoving party's claim.'" Rogers v. Morgan, 2004 WL 1056091, *3 (W.D.N.Y. 2004) (Siragusa, J.) See also Ciaprazi v. Goord, 2005 WL 3531464, *8 (N.D.N.Y. 2005) ("In this case the defendants have satisfied their initial, *modest* threshold burden of establishing the lack of evidentiary support for plaintiff's retaliation claims. Though conventional wisdom might dictate the submission of affidavits from the primary actors . . . disavowing any retaliatory motives associated with their actions, defendants' decision to rely instead upon the lack of evidentiary support for plaintiff's retaliation claims, including through plaintiff's responses to defendants' interrogatories as well as the proceedings associated with the underlying disciplinary matter, is sufficient to cast the burden upon the plaintiff to come forward with evidence demonstrating the existence of genuinely disputed material issues of fact for trial with regard to those claims." (emphasis added)). Moreover, "medical records are admissible in evidence and therefore appropriately considered in a summary judgment proceeding". Hughes v. Joliet Correctional Center, 931 F. 2d 425, 428 (7th Cir. 1991).

Relying on the intervals that Haskins was seen by medical staff for his mental health treatment while he was incarcerated, defendants argue that "there is simply no indication that any prison official deprived Haskins of his necessary health and safety needs, let alone showed a deliberate indifference to those needs." Defendants' Memorandum of Law (Dkt. #390), p. 12. According to Haskins' initial March 19, 2004 booking records, he indicated that he had a psychiatric history upon his admission to Genesee County Jail. Affidavit of William A. Zipfel (Dkt. #399), Ex. 1. Defendant Zipfel noted during the booking process that Haskins had advised him that his only known medical problem was that he suffered from anxiety and was taking Celexa and Trazadone, which had been prescribed by "Dr. Tony from Genesee County Mental Health". Id., Ex. 2. Haskins stated that he has "no other health issues and no mental health issues." Id.

On March 20, 2004, the Genesee County Jail requested Haskins' treatment records from Genesee County Mental Health. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. B, p. 8. These records include a "Brief Psychiatric Evaluation" performed by Dr. Anthony Racaniello, M.D. on January 16, 2004. Id., p. 11. This evaluation conducted by Genesee County Mental Health Services before Haskins' incarceration diagnosed him as suffering from alcohol dependence, with physiological dependence and "depressive disorder NOS", for which he was prescribed Celexa and Trazadone. Id.

On April 6, 2004, Scott Grefrath, CSW, a mental health clinical therapist, prepared a Genesee County Mental Health Consult for Haskins which indicated "Refused". Affidavit of Augusta Welsh (Dkt. #396), Ex. 1, p. 117. On May 5, 2004 Haskins complained of anxiety and panic attacks. Id. at p. 118. Haskins was seen on May 11, 2005 by Mr. Grefrath, and

at that time complained, "I want to [go] back to see Dr. Tony feels tension in shoulders. Taking Trazadone at 10 p.m. + does not get to sleep until 4 a.m. Feels hyper + unable to Relax." Id. at p.119 Mr. Grefrath indicated that he would schedule an appointment with Dr. Racaniello. Affidavit of Augusta Welsh (Dkt. #396), Ex. 1, pp. 118 and 119.

On August 10, 2004, Haskins was seen by Nicole Desmond, M.S., Mental Health Clinical Therapist, for complaints of "anger, racing thoughts, pacing, trouble sleeping, can't relax. Anxiety is bothering me." Id. at p. 120. At that time, he was still taking Trazadone, but had stopped taking Celexa three weeks previously because it was "not working." Id. Ms. Desmond's mental status exam found that he was "alert, oriented x3 . . . affect congruent, speech normal, thought content logical, goal-oriented. Focused on seeing Dr. Tony for evaluation . . . Judgment Fair." Id. On August 17, 2004, Haskins was seen again by Ms. Desmond for complaints that he needed his mental health file. Id. at p. 123. He "feel[s] better, anxiety decreased". Id. Haskins was advised that he could "see mental health as needed" Id. On August 24, 2004, Haskins was again seen by Ms. Desmond for similar complaints concerning his medical records. Id. at p. 124.

On September 1, 2004, Haskins was seen by Ms. Desmond for complaints of "anxiety attacks, and [problems] with anger. I feel like I'm being tormented. 'Nerves are Shot'" Id. at p. 126. On September 22, 2004 Dr. Racaniello performed a psychiatric evaluation of Haskins. Racaniello affidavit (Dkt. #393), Ex. 1. Dr. Racaniello recommended that Haskins be taken off of Celexa and placed on Zoloft (Id. at p. 5), which Haskins began receiving on October 13, 2004. Affidavit of Augusta Welsh (Dkt. #396), Ex. 1, p. 132. On September 28, 2004 Haskins was seen by Ms. Desmond because he was "really dissatisfied with [Dr. Racaniello's] evaluation". Id. at p. 128.

-16-

Plaintiff was next seen by Ms. Desmond on October 5, 2004. At that time, his chief complaint was "'I'm OK' Still a little frustrated-regarding Court concerns. Somewhat depressed." Id. at p. 130. On October 19, 2004, Haskins reported to Ms. Desmond that he has "increased mood swings in the past week. . . . trouble with legal case - agitated." Id. at p. 132.

On November 3, 2004, Haskins was again seen by Dr. Racaniello for complaints of "being very angry." Affidavit of Terese Bryan (Dkt. #394), Ex. 1, pp. 90-91. On November 9, 2004, Haskins reported to Ms. Desmond that as a result of the new medication prescribed by Dr. Racaniello, "'I've been feeling a lot better using other outlets.' Feel in a better space - not as irritated." Affidavit of Augusta Welsh (Dkt. #396), Ex. 1 at p. 134. On December 8, 2004, Haskins advised Ms. Desmond that he was "still agitated, stuff sets me off." Id. at p.135. He also complained that he did not know if his "hyprexa is where it should be at." Id. at p. 135. On January 12, 2005, Haskins was seen by Dr. Racaniello because he wanted to discontinue his prescription for zyprexa. Affidavit of Terese Bryan (Dkt. #394), Ex. 1, pp. 109-110. At that time Haskins' mood was stable and he had no paranoia or delusions. Id. at p. 110. On March 16, 2005, he was scheduled to see Dr. Racaniello, but refused. Id. at p. 113.

Even assuming that Haskins' mental health condition rises to the level of a serious medical need, the record is devoid of evidence from which a reasonable fact finder could conclude that defendants were indifferent to that need. There was a delay from May 11, 2003, when Haskins first requested to be seen by Dr. Racaniello, until September 22, 2004, when he was seen by Dr. Racaniello. However, in the interim, Haskins was seen by the prison's mental health staff each time he requested, and he continuously received his medications. As a result, "it does not appear here that plaintiff suffered any serious adverse effects as a result of the temporal

gap between his request for mental health care . . . and his psychiatric examination . . . . ." <u>Swift v. Tweddell</u>, 582 F.Supp.2d 437, 445 (W.D.N.Y. 2008) (Larimer, J.) (approximate three month gap in receiving a psychiatric examination from December 2004 through February 2005).

Haskins also argues that Genesee County Mental Health Services failed to treat him *prior* to his incarceration because he lacked Medicaid benefits (Third Amended Complaint (Dkt. #204), ¶210). However, "the Eighth Amendment protection against cruel and unusual punishment can only be invoked by persons convicted of crimes." <u>Davison v. City of Tucson</u>, 924 F. Supp. 989, 992 (D. Ariz. 1996). Therefore, any Eighth Amendment claims Haskins alleges for treatment he received before his incarceration are not actionable.

For these reasons, I recommend that Haskins' eighth cause of action be dismissed.


**J.    Haskins' Ninth and Thirteenth Causes of Action and the Supplemental Complaint: Denial of Medical Treatment**

Haskins alleges that defendants Gary Maha, Ronald Greer, Officer Zipfel, Officer Luplow, Officer Zehler, Genesee County, Terese Bryan, Hoy, Austin, Mangefrida, Austin, Wolff, Klometz, Manley, Ridder, Klein, Mattice, Conway, Stack, Itijen, Sage, Renz, Creegan, Cawkins, Lindsey, Dr Gary Smith, Gerg Groth, P.A. denied him adequate dental care during his incarceration. Third Amended Complaint (Dkt. #204), ¶¶216-226, 259-264; Supplemental Complaint (Dkt. #222-1), ¶¶14-31. As a result of this conduct, Haskins seeks to recover under the First, Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§241 and 242, 42 U.S.C. §12132, and New York State law. <u>Id</u>. Dkt. #204 at ¶227 and 265; Dkt. #222-1, ¶32. He seeks compensatory and punitive damages, as well as injunctive relief. <u>Id</u>. at ¶228 and 266.

In support of their motion for summary judgment, defendants rely in part on the affidavit of Terese Bryan, which attaches Haskins' medical records (Dkt. #394). Haskins argues that attorney Martin's "Affirmation, which simply summarizes notation made in the medical record, does not constitute proof in admissible form which defendants are required to submit on a motion for summary judgment." Haskins' Memorandum of Law (Dkt. #448), p. 8. However, as previously discussed, Haskins' medical records may support defendants' entitlement to summary judgment. *See* Rogers, *supra*, 2004 WL 1056091, at *3; Ciaprazi, *supra*, 2005 WL 3531464 at *8. Moreover, in addition to Haskins' medical records, defendants rely on excerpts from the depositions of Terese Bryan and Douglas Danosos, M.D., who treated Haskins. Declaration of Shawn Martin, Esq. (Dkt. #392), Exs. B and C.

### 1.   Haskins' Medical Treatment Prior to Incarceration

On May 3, 2003, Haskins was seen at Gary Smith, M.D.'s office by Physician Assistant ("P.A.") Greg Groth, for complaints of right tooth and ear pain following dental work on April 25, 2003. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. A, p. 14. Haskins was prescribed Erythromycin, an antibiotic. Id. On July 21, 2003, an x-ray was taken at the emergency room based upon Haskins' complaints of right eye pain, which revealed that his right maxillary sinus was completely opacified.[4] Id. at Ex. G. Haskins was prescribed Hydrocodone or Vicodin for his severe pain and Bactrim, an antibiotic. Id. at ¶12.

---

[4]    Opacification means that the CT scan is cloudy. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448) Appendix, Ex. K, p. 64.

On July 23, 2003, Haskins advised Dr. Smith of his visit to the emergency room and requested a non-narcotic pain killer. Id. at Ex. A, p. 11. On July 31, 2003 he was seen by P. A. Groth, who noted that he had been treated in the emergency room for "'full-blown' [Right] maxillary sinus infection 2d to DDS 'drilling' into sinus". Id. P.A. Groth ordered a CT scan. Id. He did not place Haskins on an antibiotic at that time because "there were no clinical indications to do so, and . . . he had already been on quite a number of antibiotics". Id. at Ex. K, pp. 51-52. According to Groth, "unnecessary exposure to antibiotics especially in succession, can result in a severe intestinal condition called pseudomembranous colitis, which, in plain terms, eliminates all friendly bacteria from the intestine, rendering the body unable to absorb nutrients of any kind. It requires long-term hospitalization and intensive therapy." Id. at p. 53.

At Haskins' follow-up visit with P.A. Groth on August 7, 2003, the CT scan showed opacification of the right maxillary sinus. Id. at Ex. A, p. 10. According to Groth, this can be an indication of infection or inflamation. Id. at Ex. K, p. 64. Haskins was referred to an oral surgeon and was prescribed Biaxin, an antibiotic. Id. at Ex. A, p. 10. He was seen again by P. A. Groth on August 14, 2003, and at that time, Haskins had been unable to see the oral surgeon. Id. at p. 9. Haskins was to finish his prescription of Biaxin and to take Ibuprofen to decrease inflammation and pain until he could be seen by a dentist. Id.

From December 24, 2003 through January 15, 2004, Haskins was hospitalized for an unrelated condition. The hospital records indicate that he was unable to see a dentist because he lacked insurance. Id. at Ex. H, p. 1. At that time, he still suffered from tooth pain, and Bruce Baker, M.D., noted that he would "see if we can get him in to see a dentist as soon as possible. Id. at p. 3.

## 2.   Medical Treatment During Haskins' Incarceration

Although the booking records indicate that Haskins had advised that his only known medical problem was anxiety (Affidavit of William Zipfel (Dkt. #399), Exs. 1 and 2), Haskins testified that he indicated that he had sinus issues and needed a surgeon to treat an abscess in his mouth. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. M, pp. 11 and 44.

On March 20, 2004, Nurse Terese Bryan completed a medical records consent form, which indicated that Haskins was taking Motrin, nasal spray, Claritin and Trazadone. Id. at Ex. B, p. 9. She also noted that he had a history of "chronic sinusitis". Id. On March 23, 2004, Haskins was seen by Dr. Smith, who was also the Medical Director at the Genesee County Jail. Id. at Ex. B, p. 18 and Ex. I, p. 10. Dr. Smith noted "anxiety depression, headache" Id. at Ex. B, p. 18. He re-ordered Haskins' medications, including Trazadone, Celexa and Advil. Id.

On April 5, 2004 Haskins was examined by Nurse Bryan for an admission health assessment. At that time it was noted that his teeth were in good condition. Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 20. On April 16, 2004 Haskins was seen for a sore throat and right ear pain. Id. at p. 20. At that time, Nurse Bryan noted periorbital puffiness, and that he had negative symptoms for a tooth abscess. Haskins was prescribed Claritin and Ibuprofen. Id. at p. 22. A throat culture was also taken, which was negative. Declaration of Shawn Martin, Esq. (Dkt. #392), Ex. B, p. 94. Although Nurse Bryan testified that ear pain can be a sign of tooth abscess, she acknowledged a throat infection would not tell her anything about the cause of an ear infection. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, pp. 91-93.

On April 29, 2004, Haskins was seen by Nurse Bryan for a facial infection of his sinuses on the right side of his face in the maxillary region. Declaration of Shawn Martin, Esq.

(Dkt. #392), Ex. B, p. 25.  She noted that he had right "periorbital puffiness" and "pain elicited

[with] palpation over [right] maxillary sinus".  Affidavit of Terese Bryan (Dkt. #394), Ex. 1,

p. 26.  At that time his pain was measured as an 8 out of 10.  Id. at p. 25.  Nurse Bryan requested

Haskins' records from Dr. Smith's office and referred him to P.A. Groth for "antibiotic treatment

and PO analgesia script" Id. at p. 26; Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, pp.

110-111. Nurse Bryan believed that an antibiotic was needed.  Id. at p. 112.  She also testified that

the Ibuprofen does not treat infection, and that Haskins' condition worsened from April 16

through April 29, 2004.  Id. at p. 115.

       P.A. Groth examined Haskins on May 2, 2004, and remembered Haskins as being

a patient from Dr. Smith's office. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Appendix, Ex.

K, pp. 85, 110.   He noted that Haskins had "been seen by Dr. Balnchett for [upper] tooth

extraction 6/03. . . . CT Scan 8/603 shoed severe sinusitis . . . Did not follow-up [with] oral

surgeon as directed 8/03."   Affidavit of Terese Bryan (Dkt. #394), Ex. 1,  p. 29.  He described

Haskins' condition as "subacute [right] sinusitis -chronic, [secondary to] oral surgery and

chronic." Id.  Haskins was prescribed  Biaxin, an antibiotic, and Ultram, a non-narcotic pain

reliever, for a period of ten days.  Id. See also Affidavit of Brian Fitzgerald, Esq. (Dkt. #448),

Appendix, Ex. K, p. 109. When asked if he believed that these prescriptions would help relieve

Haskins' complaints of pain and infection, Groth testified "to a degree, I would agree.  But, also,

being a chronic intermittent condition, I knew that my prescribed care was aimed at not

necessarily eradicating the cause of his discomfort and the symptoms but simply treating the . . .

subacute episode  . . . [of] May 2, 2004."  Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. K,

p. 111.

On May 6, 2004, Haskins reported that he "feels well. sinusitis pain relieved. Denies S.E. from Biaxin." Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 31. However, on May 13, 2004, he complained of hesitancy while urinating during the "last few days." Id. at p. 32. It was also noted that he has pain in his right maxillary region since June 2003, when his tooth was extracted and that sinusitis was an exacerbating factor. Id. Nurse Bryan further noted that "inmate adamant to continue Ultram for now. 'I've got to have something for this pain in my face.'" Id. at p. 33. Because urinary hesitancy was a side effect of Ultram, Haskins was referred to P.A. Groth for a possible change in his medication. Id. See also Declaration of Shawn Martin, Esq. (Dkt. #392), Ex. B, p. 144. On May 16, 2004, Groth noted that Haskins was in "no acute distress", no periorbital or soft tissue swelling", but was "tender at perinasal sinus region". Affidavit of Terese Bryan, (Dkt. #394), Ex. 1, p. 33; Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. K, p. 117. Although the Ultram relieved Haksins' pain, based upon his complaints of urinary hesitancy, Groth changed Haskins' prescriptions from Ultram to Darvocet on an as needed basis "with caution regarding habituation". Id. However, Haskins' antibiotic was stopped at this time. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. K, p. 149.

On May 25, 2004, Nurse Bryan reported that Haskins' urinary hesitancy was cured by the change in medications, and that he had good pain control with the Darvocet. Affidavit of Terese Bryan, (Dkt. #394), Ex. 1, p. 34. See also Declaration of Shawn Martin, Esq. (Dkt. #392), Ex. B, p. 148. She noted "Inmate states he good pain control [with] Darvocet. Antibiotic [prescription] completed. S/S sinusitis diminished." Affidavit of Terese Bryan, (Dkt. #394), Ex. 1, p. 34. Nurse Bryan conceded that as of May 25, 2004, there was no treatment plan to end Haskins' pain. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 149.

On June 1, 2004, Haskins complained "that he is again starting sinus pain/pressure [with] unusual discharge from nose". Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 36. Nurse Bryan noted that Haskins was to be evaluated by Dr. Danosos later in the week and was requesting Haskins' CT films from August 6, 2003. Id. Nurse Bryan asked Dr. Danosos to evaluate Haskins and make a recommendation for further treatment. Id. at pp. 36-37. Haskins gave Nurse Bryan permission to obtain up his August 6, 2003 CT films for Dr. Danosos' review. Id. at p. 35. Haskins' prescription for Darvocet was stopped on June 1, 2004. Affidavit of Brian Fitzgerald, Esq., (Dkt. #448), Ex. L, p. 245.

On June 3, 2004, Haskins was seen by Dr. Danosos, an otolaryngologist, who diagnosed him with chronic sinusitis "as a result of an abscess and an infection in his sinus related to an original extraction of his upper wisdom tooth". Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 37. See also Declaration of Shawn Martin, Esq. (Dkt. #392), Ex. C, pp. 23 and 43. He prescribed Levaquin, an antibiotic, for ten days, and Humibid, a mucolytic, to drain the sinuses. Id. See also Declaration of Shawn Martin, Esq. (Dkt. #392), Ex. C, pp. 24 and 27; Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. J, p. 24. Dr. Danosos did not rule out a fistula, and therefore requested a "follow-up in six weeks for a possible repeat CT scan if no improvement". Id. See also Declaration of Shawn Martin, Esq. (Dkt. #392), Ex. C, p. 43; Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), ¶112.

On June 11, 2004, Haskins was seen by Nurse Bryan for complaints of sinus pain and a sore throat. Id. at p. 38. Haskins' pain was rated as a 6 out of 10. Id. Nurse Bryan took a throat swab for analysis. Id. at p. 39. The throat culture presented "normal respiratory flora". Id.

at p. 41.   Nurse Bryan also noted that she would ask the physician assistant to order Darvocet for pain, and that Haskins was to continue Ibuprofen until the Darvocet was available. Id. at p. 39.

On June 12, 2004, Haskins filed a grievance indicating that he had "serious health issues that need immediate attention." Id. at p. 40.  On June 14, 2004 Haskins filed another grievance indicating that "to date I have not received any pain medication nor have I seen the doctor like the nurse said I would . . . Pain is a '10' on a scale of 1-10, Id. pp. 42-43.  On June 14, 2004, Haskins was prescribed Darvocet.  Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. K, p. 143.

On June 15, 2004, Haskins was seen by Gary Smith, M.D., the medical director at the Genesee County Jail, who noted that he was having recurrent sinusitis and that he had white spots on his tonsils.  Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 44.  Dr. Smith's assessment was tonsilitis, and he prescribed Asetelin nasal  spray, which treats sinusitis and tonsilitis. Id.; Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 62.

A tongue culture was taken on June 14, 2004.  The United Memorial Medical Center found that the sample was "positive for fungal elements . . . yeast isolated" Id. at p. 46. Nurse Bryan faxed this report to P.A. Groth on June 17, 2004, with a handwritten note that stated, "inmate symptomatic . . . pain, low grade temps.  Need to be addressed today." Id.  There is a note from Groth on the lab report from United Medical Center indicating that Haskins was medicated on June 17, 2004 with Biaxin and Nystatin, to treat Haskins' yeast infection. Id. See also Declaration of Shawn Martin, Esq. (Dkt. #392), Ex. B, pp. 214 and 234; Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, pp. 224-225.  The lab report also contains Dr. Smith's initials. Id.

On June 25, 2004, Haskins was seen by Henry Mosicki, N.P., who noted that he has a history of "severe sinusitis. Was on Biaxin and developed stomatitis and had been on Nystatin . . . for 5 dy: Has improved." Id. at p. 48. Nurse Mosicki ordered a CT scan and he noted "call Dr. Danosis" Id. at p. 48. The CT scan of Haskins' sinuses was completed on June 29, 2004, which found "no significant sinus pathology demonstrated . . . . Minor mucoperiosteal thickening of right maxillary antrum. This is a chronic fining." Id. at pp. 49-50. The report was initialed by Dr. Smith. Id. *See also* Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 234. Nurse Bryan did not call Dr. Danosos because she did not believe that the findings from the CT scan were abnormal. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, pp. 236-237.

On July 5, 2004, Haskins met again with P.A. Groth, who reviewed the CT scan report with him. Id. at p. 52. At that time Haskins indicated that his "sinus symptoms decreased or diminished, though some pain he associates with molar roots in sinus space persists. Objective physical exam unremarkable. . . . No acute distress. Oral cavity shows no signs or symptoms of infection." *See* Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. K, p. 160. Groth's assessment was "normal sinus CT . . . residual maxillary inflamation. Plan was reassurance. No further action needed. Patient understands and agrees." Id. Haskins was taking Darvocet on July 5, 2004, and his prescription was reordered by Groth on July 6, 2004. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. K, pp. 164-165. On July 20, 2004, Haskins was seen by Groth for a rash, and his notes do not indicate any complaints of sinus pain. Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 53.

On August 1, 2004, Haskins filed a grievance, claiming that he had "been on the list for (4) months and my teeth are killing me when I chew . . ." Id. at p. 54. In response, Haskins

was seen by Nurse Bryan, who advised him that "he has never informed medical staff of need to be seen by DDS. he has not has an appt scheduled - will do so now." Id. Nurse Bryan scheduled an appointment with a dentist that day. Declaration of Shawn Martin, Esq. (Dkt. #392), Ex. B, p. 267. At that time, Haskins also requested "Darvocet for pain as tylenol 'not cutting it'. . . . Inmate advised that he will need to request prescription analysis from MD/P, but to first try the tylenol." Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 55. In response, Nurse Bryan testified that she scheduled Haskins to see a dentist that day, but she conceded that this was not reflected on the dentist list she maintained. See Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, pp. 267-269. The next available appointment with the dentist was in approximately two months. Id. at p. 272. On August 10, 2004, Haskins was prescribed Darvocet by Dr. Smith. Id. at p. 265.

On August 21, 2004, Haskins was again seen by P.A. Groth, who noted "air passing though oral cavity to sinus [secondary to] extracted wisdom tooth." Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 56. Although Groth noted "ultimately need to see oral surgeon", Id., Haskins was not referred to an oral surgeon at that time. Declaration of Shawn Martin, Esq. (Dkt. #392), Ex. B, p. 276.

On August 30, 2004, Haskins complained of tooth pain, which was not relieved by Darvocet or Motrin. Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 58. At that time, Haskins indicated that his pain was a 6 out of 10. Id. He was seen by Nurse Bryan, who noted "no abscess visualized nor palpated nor palpated in oral cavity. No swelling. No discharge. No redness". Id. at p. 60. See also Declaration of Shawn Martin, Esq. (Dkt. #392), Ex. B, p. 331. Haskins was advised that he had a dentist appointment scheduled next week, and that Dr. Smith would examine him the following day. Id. Haskins indicated that he agreed with this plan. Id.

On August 31, 2004, Haskins was seen by Dr. Smith, who prescribed Erythromycin, an antibiotic, and Hydrocodone, a painkiller. Id. at p. 59. He also noted "poss sinusitis" and "See oral surgeon". Id. According to Nurse Bryan, she was responsible for filling the prescriptions and scheduling the oral surgeon in accordance with Dr. Smith's order. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 336. Although she implemented Dr. Smith's order for Erythromycin, she did not recall whether she implemented Dr. Smith's request that he be seen by an oral surgeon. Id. at p. 339. Instead, Haskins was seen by Dr. Russ Marchese, a dentist, on September 8, 2004. Id. See also Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 61. According to P.A. Groth, the "policy at the time was . . . to send the inmate first to the dentist, then on to a surgeon if our dentist felt that was appropriate." Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. K. p. 195. Nurse Bryan testified similarly. Id. at Ex. L, p. 320.

Dr. Marchese noted "refer to oral surgeon for (1) extraction of UR 2nd molar and or (2) evaluation of 3rd molar. . ." Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 61. On September 9, 2004, Nurse Bryan called Dr. Marchese's office to "request specifics as to need for oral surgery. At that time, she also called Dr. Hatton, an oral surgeon, requesting the next available appointment, which was set for October 20, 2004. Id. at p. 63. See also Affidavit of Brian Fitzgerald, Esq. (Dkt. #448) Appendix, Ex. L, pp. 341-342, 344, 353.

On September 30, 2004, Haskins was again seen by P.A. Groth, and at that time complained that his pain medication was not helping. Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 68. Groth also noted that Haskins "needs oral surgeon consult soon" Id. See also Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 344. He placed Haskins on Lortab in the lowest

possible dose as needed, to decrease chance of habituation, Celebrex, an anti-inflammatory, and Cleocin, an antibiotic.  Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. K, p. 196.

Although Nurse Bryan had already scheduled Haskins to be seen by Dr. Hatton, on October 1, 2004, P.A. Groth completed an outpatient form for Haskins requesting an oral surgeon "ASAP" "to be recommended by Dr. Marchese".  Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 69.  *See also* Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 346-348.  He also noted "please evaluate and treat potential for right maxillary sinus infection and potential bony involvement following recurrent . . . abscesses".  Id.  *See also* Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. K, p. 198.  On the bottom of the outpatient form, Nurse Bryan noted "Haskins is aware he is already scheduled to see oral surgeon." Id.

On October 13, 2004, Haskins was seen by Nurse Mosicki for facial and teeth pain. Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 70.  Nurse Mosicki noted that Haskins was referred to an oral surgeon and that he "may need ENT evaluation -again.  Pt. states he is satisfied [with] this tx plan." Id. (emphasis in original).  He was seen again by Nurse Mosicki on October 17, 2004 for a sore throat. Id. at p. 71  Nurse Mosicki also saw Haskins on October 17, 2004 for an abscess. Id. at p. 72    It appears that Bactrim, an antibiotic, was prescribed at that time.  Id.

The outpatient treatment form indicates that on October 20, 2004, Haskins was seen by Dr. Hatton, who recommended that he be treated at ECMC or Strong Memorial for the removal of an oral fistula. Id. at p. 73.  However,  Haskins testified that when he arrived at Dr. Hatton's office, Dr. Hatton stated that he did not treat inmates.  Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. M, p. 35. The next day, Nurse Bryan made an appointment for Haskins to be seen at the ECMC clinic. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 363.  On October

28, 2004, Haskins had oral surgery at ECMC. Affidavit of Terese Bryan (Dkt. #394), Ex. 1, pp. 79-82. The following day, Haskins reported to Nurse Mosicki that the "oral surgeon says there may be some sinus involvement", and a salt water rinse was prescribed. Id. at p. 82.

On November 1, 2004, Nurse Bryan consulted with ECMC about Haskins' post-operative instruction because the "med department has no information available from his visit there 10/28/04." Id. at p. 85. ECMC advised that Haskins should receive warm water rinses and that "no pain medication ordered as 'it was a very simple extraction [with] no complications." Id. at p. 85. At Haskins' November 3, 2004 follow-up visit at ECMC, it was noted "need evaluation of chronic sinus problems by ENT" and "sinus problems not related to tooth pain". Id. at pp. 92-93; Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. E, p. 13. No further treatment at ECMC was necessary. Id. Nurse Bryan did not recall whether she made an appointment for Haskins to see an ear, nose and throat specialist on November 4, 2004. See Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 370.

On November 5, 2004, Haskins was seen by Nurse Mosicki. At that time, Haskins reported that his teeth were better, but that he still had some "maxillary tenderness & pressure". Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 94. Nurse Mosicki noted that "at this point I would like to send him back to ENT." Id. On November 30, 2004, Haskins was seen by Dr. Danosos, who recommended a CT scan and to continue Bactrim. Id. at pp. 98-99. See also Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 371. Pursuant to Dr. Danosos' request, a CT scan was performed on December 1, 2004. Id. at p. 100. The CT scan found "near complete opacification of right maxillary antrum secondary to severe sinusitis and possible underlying polyposis. Clinical correlation is recommended." Id. at p. 101.

On December 6, 2004, Nurse Bryan contacted Dr. Danosos' office because she had not heard anything from him following the CT scan. Id. at p. 102. Dr. Danosos' office scheduled an endoscopic examination for December 10, 2004, and indicated that there was no need for further antibiotic treatment. Id. See also Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, pp. 372-373. The December 10, 2004 appointment was rescheduled to December 21, 2004 by Dr. Danosos' office. Id. at p. 103.

At the December 21, 2004 endoscopic examination, Dr. Danosos prescribed Levaquin, an antibiotic, and Mucinex, which were administered by Nurse Bryan. Id. at p. 107. See also Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 374. Haskins was to follow-up with Dr. Danosos in five months, if necessary. Id. Dr. Danosos testified that chronic sinusitis can lead to osteitis, an infection of the sinus bones, if left untreated. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. J, p. 25. The infection can also spread into the brain causing meningitis, resulting in brain damage or death. Id. at pp. 25-27.

Haskins was seen by Nurse Mosicki on December 22, 2004. Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 105. See also Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, pp. 374-375. At that time, Haskins' Hydrocodone prescription was reduced. Id. On February 3, 2005, Haskins was seen by Nurse Mosicki for left rear tooth pain. Nurse Mosicki noted that Haskins "has been to dentist in the past, but this was never addressed. Pt has been asymptomatic until recently." Id. at p. 111. Haskins was prescribed Motrin and a dentist appointment was scheduled for April 20, 2005. Id. See also Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, pp. 380-382. On March 1, 2005, Haskins was seen by Dr. Smith for a sore throat and earache. He was prescribed nasal spray. Id. at p. 112.

### 3.    Liability of Nurse Bryan, Dr. Smith and P.A. Groth

Haskins argues that defendants Nurse Bryan, Dr. Smith and P.A. Groth "only treated Haskins' symptoms of infection and pain with antibiotics and pain killers and failed to get Haskins referred to an oral surgeon [until October 20, 2004] despite his need for such a referral well before he was even incarcerated at the Genesee County Jail on March 19, 2004." Haskins' Memorandum of Law (Dkt. #448), p. 4. He claims that during this period he "remained in considerable pain, was forced to take narcotic opioid controlled substances repeatedly, was forced to take antibiotics repeatedly, and was forced to take non-narcotic pain killers such as Ibuprofen for many, many months. This kind of drug prescription and use presented additional dangers to Haskins of becoming addicted to the pain killers, of having all of the bacteria in his intestine killed by the antibiotics, of developing drug resistant bacteria for which no antibiotics would work, and of developing stomach upset and bleeding from the Ibuprofen and other non-narcotic pain killers which Haskins actually experienced in December, 2004." Id. at pp. 4-5.[5]

While Haskins may question the propriety of the treatment which he received, he has failed to create a genuine issue of fact as to whether these defendants acted with deliberate indifference. "Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation." Graham v. Gibson, 2007 WL 3541613, *5 (W.D.N.Y. 2007) (Siragusa, J.). "Determinations made by medical providers within their discretion are given a

---

[5]    Although Brian Fitzgerald, Esq.'s Affidavit mentions the treatment Haskins received for his vision, he does not appear to pursue this as part of his Eighth Amendment deliberate indifference claim in Haskins' memorandum of law.

'presumption of correctness' when it concerns the care and safety of patients." <u>Mendoza v. McGinnis</u>, 2008 WL 4239760, *11 (N.D.N.Y. 2008).

Assuming that Haskins' chronic sinusitis constituted a serious medical condition, he must still establish that defendants "acted with a sufficiently culpable state of mind, i.e., deliberate indifference. He must therefore show that prison officials intentionally denied, delayed access to, or intentionally interfered with prescribed treatment." <u>Tafari v. Stein</u>, 2009 WL 331378, *6 (W.D.N.Y. 2009) (Scott, M.J.). However, the record demonstrates that defendants consistently attempted to control his pain and treat his chronic sinusitis.

When P.A. Groth first examined Haskins at the Genesee County Jail on May 2, 2004, he prescribed antibiotics and a non-narcotic pain reliever, which diminished Haskins' sinusitis symptoms. When Haskins' sinusitis symptoms increased on June 1, 2004, he was promptly seen by Dr. Danosos, an ear, nose and throat specialist, on June 3, 2004. While Haskins believes that he should have been referred to an oral surgeon (as indicated in P.A. Groth's August 7, 2003 records), rather than to an ear, nose and throat specialist (*See* Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), ¶91) this is a disagreement over proper treatment, rather than a demonstration of deliberate indifference. *See* <u>Graham</u>, *supra,* 2007 WL 3541613, *5.

"The Constitution does not require that an inmate receive a particular course of treatment, or that an inmate see a requested specialist." <u>Tafari</u>, *supra*, 2009 WL 331378, at *7. Moreover, as defendants note, Haskins' chronic sinusitis was eventually found to be unrelated to his tooth condition, and he ultimately continued his treatment for chronic sinusitis with Dr. Danosos even after having oral surgery. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. E, p. 13.

Haskins also argues that in accordance with Dr. Danosos' instructions he should have been seen by Dr. Danosos again by mid-July. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), ¶113. However, Dr. Danosos' instructions were to "follow up in six weeks for possible repeat CT scan *if no improvement*." Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 37 (emphasis added). Therefore, because there were no abnormal findings from the CT scan performed June 29, 2004, Nurse Bryan did not schedule a follow-up visit with Dr. Danosos. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, pp. 236-237. Likewise, on July 5, 2004, Haskins also reported to P.A. Groth that his sinus symptoms had decreased or diminished. Id. at Ex. K, p. 160.

At or about this time, Haskins' complaints shifted to his teeth. Id. ("some pain he associates with molar roots"); Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 54. Therefore, the next available dental appointment was scheduled. Declaration of Shawn Martin, Esq. (Dkt. #392), Ex. B, p. 267; Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 272. Although the appointment was two months later, in the interim Haskins was prescribed pain relievers, and was seen regularly by the prison's medical staff. *See* Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. L, p. 265)

In late August 2004, both Dr. Smith and P.A. Groth indicated that Haskins should see an oral surgeon. Affidavit of Terese Bryan (Dkt. #394), Ex. 1, pp. 56 and 59. Haskins complains that Nurse Bryan was deliberately indifferent to his condition by referring him to a dentist rather than an oral surgeon as directed by Dr. Smith and P.A. Groth (Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), ¶158. While "prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors", Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987), there is no evidence that Nurse Bryan deliberately denied or ignored Dr.

-34-

Smith's or P.A. Groth's instructions. Nurse Bryan was merely acting in accordance with jail policy. According to both P.A. Groth and Nurse Bryan, Haskins needed to be seen by a dentist before being referred to an oral surgeon. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. K, p. 195 and Ex. L, p. 320.

Haskins also argues that Nurse Bryan acted with deliberate indifference to his medical condition by waiting from September 8, 2004, when dentist Dr. Marchese indicated that Haskins needed to be seen by an oral surgeon, until October 20, 2004, when he was ultimately seen by Dr. Hatton, an oral surgeon. Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), ¶¶180-181. However, Nurse Bryan scheduled the next available appointment with Dr. Hatton following Dr. Marchese's referral. Id. at Ex. L, pp. 341-342, 344, 353; Affidavit of Terese Bryan (Dkt. #394), Ex. 1, p. 63. Although Haskins argues that she should have asked for an appointment as soon as possible, Haskins' condition continued to be monitored by the prison's medical staff and treated with pain medication, anti-inflammatories, and antibiotics during this period. See, e.g., Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. K, p. 196.

In any event, "alleged delays and in providing adequate medical care also do not rise to the level of deliberate indifference where the delay does not cause further injury." Orosieta-Mojica v. LaManna, 2007 WL 2893282, *3 (D.S.C. 2007) ; Martin v. Roche, 2009 WL 32635, *8 (C.D.Cal. 2009) ("a delay in medical treatment generally amounts to deliberate indifference only if it leads to further injury"). Moreover, there is no indication that this delay was the result of Nurse Bryan intentionally denying or delaying Haskins' access to medical care, or that defendants were ignoring Haskins' condition. See Tafari, supra, 2009 WL 331378 at *7; Balkum v. Unger, 2009 WL 290439, *5 (W.D.N.Y. 2009) (Skretny, J.) (dismissing deliberate indifference claim

where "it appears only that Plaintiff's surgery was delayed approximately six months, and that he suffered no adverse effects from the delay, apart from continuing pain, for which he received pain medication").[6]

Haskins further argues that Nurse Bryan acted with deliberate indifference in referring him to Dr. Hatton, who did not treat inmates. Affidavit of Brian Fitzgerald, Esq., (Dkt. #448), ¶185. However, even if Nurse Bryan erroneously made an appointment with Dr. Hatton, there is nothing to indicate that this was anything other than a mistake. *See* Graham, *supra*, 2007 WL 3541613 at *5 ("a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability". Burton v. New York State Department of Corrections, 1994 WL 97164, *4 (S.D.N.Y. 1994) ("To allow such a claim to rise to the level of 'deliberate indifference' would allow plaintiff to proceed with a federal action based solely on defendants' mistake or apparent mistake. The Supreme Court has rejected such 'inadvertent failure to provide adequate medical care' as a basis for a claim of 'deliberate indifference' in violation of the Eighth Amendment"). When it was learned that Dr. Hatton would not treat Haskins, he was promptly treated at ECMC pursuant to Dr. Hatton's instructions. Id. at Ex. L, p. 363; Affidavit of Terese Bryan (Dkt. #394), Ex. 1, 79-82. When Haskins' chronic sinusitis was not cured by the oral surgery, he was referred back to Dr. Danosos for further treatment.

---

[6] *But see* Wegman v. Grimmke, 2007 WL 2892631, *12 (W.D.N.Y. 2007) (Skretny, J.) (cited by Haskins) (denying the defendants motion for summary judgment where the plaintiff was denied facial surgery and pain medications for 14 months and the defendants produced no evidence that rebutted the diagnoses or treatment recommendations of the plaintiff's doctors or demonstrated that the defendants undertook efforts to address plaintiff's need for facial surgery).

While Haskins claims that he should not have received repeated courses of antibiotics during his incarceration (Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), ¶19; Haskins' Memorandum of Law (Dkt. #448), p. 4), this is merely a disagreement about the proper course of treatment. There is nothing to suggest that this cause of treatment was deliberately indifferent to Haskins' condition. Even Dr. Danosos, whose treatment Haskins does not criticize, treated his chronic sinusitis with antibiotics in June, November and December 2004. Moreover, Haskins does not even suggest what alternative course of treatment (*e.g.* surgery) was preferable for his chronic sinusitis.

Haskins also takes issue with defendants' decisions to prescribe narcotic versus non-narcotic pain relievers and the duration of these prescriptions. However, this too is nothing more than a disagreement over the course of treatment. There is no evidence that defendants acted with deliberate indifference in prescribing pain relievers; in fact, the medical records reflect a concern for habituation in prescribing narcotic pain relievers. Moreover, when Ultram led to side effects, Haskins was promptly prescribed an alternative pain reliever.

A review of the record demonstrates that Haskins was repeatedly treated by the prison's medical staff at regular intervals, prescribed medications to treat his symptoms and discomfort, and treated by outside specialists in an effort to address his conditions. In order to avoid summary judgment, Haskins must establish more than that the defendants negligently chose to pursue an ineffective form of medical treatment for his condition. "Plaintiff's assertion is that defendants committed acts of deliberate indifference by failing to relieve him of the pain caused by chronic sinusitis and by denying his wish to have corrective surgery. However, the facts as

asserted at most support a claim of malpractice." <u>Orosieta-Mojica</u>, *supra*, 2007 WL 2893282 at *2.

Considering the record in the light most favorable to Haskins, there is simply no evidence which would support a reasonable finding that defendants acted with the degree of recklessness or malice sufficient necessary to establish deliberate indifference. Therefore, I recommend that the deliberate indifference claims asserted against defendants Nurse Bryan, Dr. Smith and P.A. Groth in Haskins' ninth and thirteenth causes of action and his Supplemental Complaint be dismissed.

### 4.    Liability of the Remaining Defendants

Defendants argue that other than Nurse Bryan, Dr. Smith and P.A. Groth, Haskins has not demonstrated the personal involvement of any other defendant in his dental care. Reply Declaration of Shawn Martin, Esq. (Dkt. #466), ¶13. I agree. Personal involvement is a "prerequisite to an award of damages under § 1983." <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir.1995). Therefore, "in a section 1983 action, a plaintiff must allege with specificity the personal involvement of each named defendant in the alleged constitutional deprivations." <u>Sanders v. New York City Department of Corrections</u>, 2009 WL 222161, *5 (S.D.N.Y. 2009).[7]

Because Haskins has failed to specify a basis for liability against the other defendants, I recommend that Haskins' ninth and thirteenth causes of action and his Supplemental Complaint be dismissed.

---

[7]    Although Nurse Mosicki participated in Haskins' care, he is not named as a defendant.

**K.      Haskins' Tenth Cause of Action:  Denial of Access to Grievance Forms**

Haskins alleges that Superintendent Luplow and corrections officers Maha, Zehler, Zipfel, and Cawkins denied him access to the Genesee County Jail's grievance procedure by denying him access to grievance forms.  Third Amended Complaint (Dkt. #204), ¶¶230-237.  In response, defendants argue that Haskins has failed to exhaust his administrative remedies for this claim, and that in any event, there is no constitutional right to a grievance procedure.  Defendants' Memorandum of Law (Dkt. #390), pp. 17-18.

Haskins alleges that as a result of this conduct, he is entitled to recover under the First, Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§241 and 242, 42 U.S.C. §12132, 28 CFR part 35[8], and New York State law.  Id. at ¶238.  He seeks compensatory and punitive damages, as well as injunctive relief.  Id. at ¶239.

There is varying authority on whether there is a constitutional right to a grievance procedure: compare Chadwick v. Mondoux, 2007 WL 2891655, *6 (N.D.N.Y. 2007) ("Courts have consistently held that because grievances procedures are undertaken voluntarily by the New York and other states, they are not constitutionally required.  Because the grievance procedures are not constitutionally required, a violation of those procedures or the failure to enforce them does not give rise to a claim under section 1983"); Nolley v. County of Erie, 2008 WL 859165, *3 (W.D.N.Y. 2008) (Skretny, J.) ("The 'occasional failure of prison personnel to provide plaintiff with grievance forms does not constitute a cognizable claim under §1983'"); Harnett v.

---

[8]      "28 CFR, Part 35 was adopted for the purpose of effectuating subtitle A of title II of the ADA, which is what is involved in this case and which prohibits discrimination on the basis of disability by public entities." Outlaw v. City of Dothan, Alabama, 1993 WL 735802, *4 (M.D.Ala. 1993).

Barr, 538 F. Supp. 2d 511, 522 (N.D.N.Y. 2008) ("It has been held that because grievance procedures are undertaken voluntarily by the State, refusal to process a grievance or the improper handling of a grievance does not by itself rise to the level of a constitutional violation"); Johnson v. New York City Department of Health, 2008 WL 5378124, *3 (S.D.N.Y. 2008) ("even if Jenkins is correct that inmate medical complaints are knowingly excluded from the institutional grievance process at Rikers Island, that allegation does not state a constitutional claim"); Liggins v. Parker, 2007 WL 2815630, *17 (N.D.N.Y. 2007) ("The plaintiff's allegations regarding the lack of a meaningful grievance procedure . . . do not rise to a level of constitutional significance") with Benitez v. Locastro, 2008 WL 4767439, *11 (N.D.N.Y. 2008) ("Notwithstanding some recent District Court caselaw suggesting otherwise, the Second Circuit in [Franco v. Kelly, 854 F. 2d 584 (2d Cir.1988)] was clearly placing a prisoner's right of redress of administrative grievances on par with a prisoner's right to seek redress in judicial forums when it held that '[l]ike the right of access to the courts, the right to petition is substantive rather than procedural and therefore 'cannot be obstructed regardless of the procedural means applied.'" . . . and further noting that 'intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that . . . section 1983[is] intended to remedy.'")

Even accepting the court's rationale in Benitez, supra, "to establish standing for a claim for denial of right of access, an inmate must show that he has suffered an actual injury traceable to the challenged conduct of prison officials-that is, that a 'nonfrivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials." Benitez, supra, 2008 WL 4767439 at *12, Haskins has failed to introduce any evidence that defendants' alleged refusal

to process his grievances resulted in some prejudice to his ability to file a filing a nonfrivolous legal action.

Therefore, I recommend that Haskins' tenth cause of action be dismissed.


**L.      Haskins' Twelfth Cause of Action:  Denial of Recreation**

Haskins alleges that Genesee County Jail  denied him sufficient recreation while he was incarcerated.  Third Amended Complaint (Dkt. #204), ¶250.  He claims that "there is a indoor room with nothing to do at all.  There is a SWUARE [*sic*] room with mats on a small part of the floor and said room has no more than one 400 square foot", that the windows in this room "are usually closed in the winter months", that he did not receive outdoor clothing to wear in this room which is not heated, and that he was strip searched before entering this room.  Id. at  ¶¶ 250-255.

Haskins alleges that as a result of this conduct, he is entitled to recover under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§241 and 242, and New York State law.  Id. at ¶256.  He seeks compensatory and punitive damages, as well as injunctive relief.  Id. at ¶257.

Defendants argue that Haskins has failed to exhaust his administrative remedies with respect to this cause of action.  Affidavit of Shawn Martin, Esq. (Dkt. #392), ¶¶10, 81; Discovery Appendix B, Volume 1 (Dkt. #98).  Haskins does not dispute that he failed to exhaust his administrative remedies, nor has he provided any justification for failing to do so. Therefore, I recommend that this cause of action be dismissed on the basis that it is unexhausted.

Moreover, even if this claim *had* been exhausted, I would recommend that it be dismissed on the merits. Defendants argue that this cause of action should be dismissed because it is only brought against the Genesee County Jail, which is not a proper defendant. Affidavit of Shawn Martin, Esq. (Dkt. #392), ¶83. As discussed *supra*, I agree.

Furthermore, Haskins has failed to establish an Eighth Amendment violation. "Exercise is a basic human need protected by the Eighth Amendment to the United States Constitution." Dabney v. McGinnis, 2006 WL 1285625, *4 (W.D.N.Y. 2006) (Arcara, J.). "However, not every deprivation of exercise amounts to a constitutional violation. Rather, a plaintiff must show that he was denied all meaningful exercise for a substantial period of time. Factors to consider in making this determination are: (1) the duration of the deprivation; (2) the extent of the deprivation; (3) the availability of other out-of-cell activities; (4) the opportunity for in-cell exercise; and (5) the justification for the deprivation." Id.

By his own admission, Haskins was offered recreation on a daily basis, but chose not to participate. Affidavit of Shawn Martin, Esq. (Dkt. #392), Ex. A, pp. 81-82. Haskins testified that in addition to the recreation room that was provided, he believed that the jail should have offered weights and "more recreational things to do, as far as games or . . . some kind of ball." Affidavit of Brian Fitzgerald, Esq. (Dkt. #448), Ex. M, pp. 110-112. This is insufficient to establish an Eighth Amendment violation. *See* Williams v. Goord, 142 F.Supp.2d 416, 425 (S.D.N.Y. 2001) ("a plaintiff must show that he was denied *all* meaningful exercise for a substantial period of time." (emphasis added)). Therefore, I find that no reasonable factfinder could conclude that Haskins' Eighth Amendment rights were violated in this regard.

**M.     Haskins' Twenty-Third Cause of Action: State Law Clams**

Haskins "brings this cause of action for all NEW YORK STATE Law violations
alleged as detailed in each and every cause of action herein." Third Amended Complaint (Dkt.
#204), ¶325. Defendants seek dismissal of this cause of action on the basis that Haskins has failed
to establish violations of federal law.  Declaration of Shawn Martin, Esq. (Dkt. #392), ¶115.
Haskins does not dispute this aspect of defendants' motion.

Since I have recommended dismissal of all of Haskins' federal law claims,  I also
recommend that this court decline to exercise supplemental jurisdiction over Haskins' state law
claims pursuant to 28 U.S.C. §1367.  *See* <u>Marcus v. AT&T Corp.</u>, 138 F. 3d 46, 57 (2d Cir. 1998)
("In general, where the federal claims are dismissed before trial, the state claims should be
dismissed as well.").

**CONCLUSION**

For these reasons, I recommend that defendants' motion for summary judgment
(Dkt. #389) be GRANTED.   Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the
Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the
Clerk of this Court within ten (10) days after receipt of a copy of this Report and
Recommendation in accordance with the above statute, Fed. R. Civ. P. ("Rule") 72(b) and Local
Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law
and/or evidentiary material which could have been, but was not presented to the magistrate judge

in the first instance. *See, e.g.*, <u>Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.</u>, 840 F. 2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.</u>

**SO ORDERED.**

DATED:     March 30, 2009

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge